IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Dennis Pointer,

      Plaintiff,

      v.                        Case No. 2:11-cv-0109

Mr. Marc, et al.,             JUDGE JAMES L. GRAHAM
                             Magistrate Judge Kemp

      Defendants.

<u>REPORT AND RECOMMENDATION</u>

Plaintiff, Dennis Pointer, a state prisoner, filed this civil rights action under 42 U.S.C. §1983 against various state prison officials.  He did not pay the filing fee, but did file a motion for leave to proceed *in forma pauperis.*  At the time he filed this action, Mr. Pointer was incarcerated at the Chillicothe Correctional Institution.

I.  <u>Background</u>

By order dated March 8, 2011, the Court noted that Mr. Pointer has had three or more cases or appeals dismissed in the past as frivolous or for failure to state a claim.  <u>See, e.g.,</u> <u>Pointer v. Brown & Williamson</u>, Case No. 1:97-cv-267 (S.D. Ohio); <u>Pointer v. Jorgensen</u>, Case No. 1:00-cv-861 (S.D. Ohio); <u>Pointer v. Lyon</u>, Case No. 1:02-cv-486 (S.D. Ohio).  Under the Prison Litigation Reform Act codified at 28 U.S.C. §1915(g), the so-called "three strikes" rule, a prisoner is prevented from proceeding *in forma pauperis* if that prisoner "has, on 3 or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the ground that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."

While Mr. Pointer addressed the issue of imminent danger in
his initial motion, because of the way in which he did so, the
Court was unable to consider the issue without further
information.  Specifically, the Court noted that, of the
allegations that might suggest imminent danger, including those
of inadequate medical care or other health-related concerns,
those claims were directed toward employees of the Allen
Correctional Institution.  At the time he filed his complaint,
however, Mr. Pointer was incarcerated at the Chillicothe
Correctional Institution.  The Court also noted that Mr. Pointer
had not supported his allegations with an affidavit or sworn
statement.  In order to resolve this matter, the Court ordered
Mr. Pointer "to support his request for leave to proceed *in forma
pauperis* with an affidavit explaining the course of treatment he
has received since he arrived at the Chillicothe Correctional
Institution, accompanied by any medical records or grievances
related to his claim that he is still being denied treatment in a
way that threatens his future health or safety."  See Order (Doc.
#6), p. 5.

In response, Mr. Pointer has made no less than six filings,
including a sworn affidavit (Doc. #7), a motion for declaratory
judgment and motion to amend the sworn affidavit (Doc. #8),
another sworn affidavit (Doc. #11), a motion to amend (Doc. #12),
an "amended document" (Doc. #13), and a motion to amend his
complaint (Doc. #15).  He has also filed three notices of his
change of address (Docs. #9, #10, and #14).  The first two
notices indicate that, at some point after the Court issued its
order of March 8, 2011, Mr. Pointer was transferred from the
Chillicothe Correctional Institution to the Belmont Correctional
Institution.  The most recent notice, filed May 11, 2011,
indicates that Mr. Pointer currently is incarcerated at the
Lebanon Correctional Institution.

-2-

## II.  Mr. Pointer's Filings

In his initial motion, Mr. Pointer raised issues regarding his foot condition, high blood pressure and dizziness, and his need for a bottom bunk restriction.  His additional filings, which were directed to address his course of treatment at the Chillicothe Correctional Institution with respect to these issues, will be summarized below.  However, as this summary will show, despite the Court's direction, very little of the information contained in these various filings relates to Mr. Pointer's course of treatment at that particular institution.

In his sworn affidavit filed March 24, 2011 (Doc. #7), Mr. Pointer asserts that he received orthotics and boots prescribed by the doctors at the Correctional Medical Center while he was at the Chillicothe Correctional Institution.  The doctor at the Chillicothe Correctional Institution made two referrals for Mr. Pointer to have an MRI of his feet and one referral to see the "Inst. foot docter."  While at the Chillicothe Correctional Institution, Mr. Pointer told the supervising psychologist about his bottom bunk and range restriction, surgery consultation, and other medical concerns.  Mr. Pointer was transferred to the Belmont Correctional Institution before he was able to pursue the referrals.

Mr. Pointer attached to this filing five exhibits.  Exhibit A is an Ohio Department of Rehabilitation and Correction memorandum from Mr. Croft to the Warden of the Chillicothe Correctional Institution dated March 8, 2011, indicating, without specificity, receipt on March 2, 2011, of a grievance from Mr. Pointer.  The second exhibit, also marked as Exhibit A, is a notification of grievance dated February 28, 2011, signed by Mr. Pointer and asserting that he was transferred to the Chillicothe Correctional Institution from the Belmont Correctional Institution and that he wants to stay at Chillicothe and not be

transferred back to Belmont.  Exhibit B is a handwritten statement made by Mr. Pointer with a handwritten response dated March 15, 2011.  In this statement, Mr. Pointer claims that he is being denied "his human rights out of retiliation (sic) by Be.C.I. staff...."  Exhibit C is a rules infraction board form dated March 17, 2011, indicating that Mr. Pointer received the following disposition: "15 days DC 3/16/11 through 4/1/11 and a recommendation for local control placement due to 6th Rib Hearing for Rule 14 since 2010."  Exhibit D is an informal complaint resolution form dated March 17, 2011, presumably completed by Mr. Pointer and requesting shower accommodations to address his medical needs and a bottom bunk restriction while at the Belmont Correctional Institution.

In his motion for declaratory judgment and motion to amend his sworn affidavit filed March 28, 2011 (Doc. #8), Mr. Pointer makes a number of claims.  However, it appears from all of Mr. Pointer's other filings that this filing contains allegations relating exclusively to Mr. Pointer's incarceration at the Belmont Correctional Institution.  Mr. Pointer contends that the shower in his cell does not have a working emergency button and has a pre-set temperature which is too hot causing him shortness of breath, dizziness, and chest pain.  Further, he asserts that he has a "self-carry" prescription for nitroglycerin for his chest pain but he is not allowed to carry the medication because it is in a glass bottle.  Additionally, he contends that he is not allowed to sleep in the bottom bunk despite his medical issues because he has been assigned to the top bunk.  Mr. Pointer claims that he is housed with two other inmates in a cell designed to accommodate only two inmates.  He asserts that, as a result of all these living conditions, he has had the dosages of his mental health medications increased.  Finally, he requests that the Court declare unconstitutional the mandatory sex

offender program which he was required to complete but others were not. Mr. Pointer has attached to this filing four decisions on grievance appeals dated between February 3, 2011, and February 24, 2011. These decisions relate to Mr. Pointer's grievances that the Belmont Correctional Institution was not honoring his special footwear requests, the loss of personal property, and denial of access to the law library, grievance forms, and legal services such as copying and typing.

The issues raised in Mr. Pointer's sworn affidavit filed April 7, 2011 (Doc. #11) also appear to relate to his incarceration at the Belmont Correctional Institution. Mr. Pointer claims that the institution has no legal services department and that is making it difficult for him to demonstrate his imminent danger. Mr. Pointer further states that he was told that he could not keep his nitroglycerin with him because it was in a glass bottle and because he had overdosed on the medication four months prior. Rather, he was told that if he needed his nitroglycerin, he was to notify the corrections officer who would call the nurse to bring it. Additionally, Mr. Pointer asserts that he was told that he does not have a bottom bunk restriction ordered by a doctor.

He has submitted five exhibits in support of this affidavit. Exhibit A is an undated hand-written request for copies of legal cases and other copying services with a hand-written response indicating that the institution has no legal services department. Exhibit B is another undated hand-written document with another hand-written response indicating that the doctor at the Belmont Correctional Institution did not order a lower bunk restriction. Exhibit C is an informal complaint resolution form dated March 24, 2011, in which the response to Mr. Pointer's claim about his need to carry his nitroglycerin was that, for his own safety, he needed to notify the corrections officer who would notify the

-5-

nurse to bring the medication. Exhibits D and E are affidavits from two other inmates stating that a nurse told Mr. Pointer he is allowed to carry his nitroglycerin.

Mr. Pointer's motion to amend, also filed April 7, 2011 (Doc. #12), notes the lack of a legal services department, suggests that he may have been transferred back to the Chillicothe Correctional Institution for mental health treatment, claims the institutional grievance procedure is arbitrary and capricious, and seeks to amend his complaint to add new defendants. He has attached to this filing a notification of grievance form dated April 4, 2011, in which he asserts that he has been denied medical care while at the Belmont Correctional Institution. According to this grievance, Mr. Pointer claims that his inability to "self-carry" his nitroglycerin is contrary to doctor's orders.

Mr. Pointer's motion to amend his sworn affidavit filed April 18, 2011 (Doc. #13) brings some degree of clarity to all of the above filings and to some degree explains his attempts to comply with the Court's order to support his request for leave to proceed in forma pauperis with information regarding his course of treatment at the Chillicothe Correctional Institution. Mr. Pointer reiterates that while he was housed at the Chillicothe Correctional Institution, the doctor at the Correctional Medical Center referred him for an MRI of his foot and referred him to the institutional podiatrist for a surgery consultation. On March 8, 2011, Mr. Pointer was transferred to the Belmont Correctional Institution where the doctor informed him that the central office had cancelled the referrals. On March 21, 2011, while still housed at the Belmont Correctional Institution, Mr. Pointer was told he could not carry his nitroglycerin because it was in a glass bottle. On March 24, 2011, the doctor ordered the nurse to return the medication to Mr. Pointer. When Mr. Pointer

-6-

filed a grievance against the nurse for refusing to allow him to
"self-carry" his nitroglycerin, he was informed by the health
care administrator that he was not allowed to carry his
nitroglycerin because he had overdosed on it.  Mr. Pointer
requested a refill of his nitroglycerin on April 4, 2011, and, at
that time, the doctor agreed that Mr. Pointer should be required
to have the nurse administer his nitroglycerin.  On April 10,
2011, Mr. Pointer experienced chest pain and waited nearly an
hour for the nurse to arrive and administer two nitroglycerin
pills although he had requested three.  The nurse took Mr.
Pointer to the infirmary, administered an EKG (the results of
which she determined were abnormal), and sent him to the
emergency room of a local hospital.  The emergency room doctor
administered to Mr. Pointer a nitroglycerin pack and aspirin and
recommended that the doctor at the Belmont Correctional
Institution prescribe that specific treatment for Mr. Pointer.
Mr. Pointer suggests that, perhaps for some retaliatory reason
relating to the grievance against the nurse, the doctor at the
Belmont Correctional Institution has refused to follow the advice
of the emergency room physician and will not prescribe a
nitroglycerin pack.  On April 12, 2011, Mr. Pointer once again
experienced chest pain and waited 45 minutes for the nurse to
arrive with his nitroglycerin.

     In his most recent filing, captioned as a motion to amend
the complaint (Doc. #15), Mr. Pointer attaches four exhibits
which he would like to have included with his complaint.  The
first exhibit, an informal complaint resolution form with a
submission date of March 24, 2011, and a response date of March
28, 2011, relates to many of the same health issues and alleged
lack of accommodations discussed above.  Exhibit B appears to be
a hand-written response dated April 13, 2011, indicating without
specificity that Mr. Pointer's "medical condition" does not

require special accommodations.  Exhibit C is a disposition of
grievance form indicating that, to the extent Mr. Pointer
believes he needs a bottom bunk restriction due to dizziness and
lightheadedness caused from medications, he already has a bottom
bunk restriction due to the medical issues involving his foot.
Exhibit D is a notification of grievance signed by Mr. Pointer
and dated May 2, 2011, in which he claims that various health
care providers have been deliberately indifferent to his serious
medical needs including specifically his need for a bottom bunk
restriction and his need for a change in his blood pressure
medication.  All of these exhibits appear to relate to issues
arising during Mr. Pointer's incarceration in the Belmont
Correctional Institution.

### III.  Analysis

For purposes of 28 U.S.C. §1915(g), the Court is to consider
whether Mr. Pointer is in imminent danger at the time of the
filing of the complaint.  Vandiver v. Vasbinder, 2011 WL 1105652,
*2 (6th Cir. March 28, 2011) ("the plain language of §1915(g)
requires the imminent danger to be contemporaneous with the
complaint's filing.").  As discussed above, in Mr. Pointer's
complaint, most of his allegations regarding his medical care
were directed toward employees of the Allen Correctional
Institution although he was incarcerated at the Chillicothe
Correctional Institution at the time of filing.  In an effort to
allow Mr. Pointer to clarify the allegations of his complaint as
they relate to any claim of imminent danger at the time of its
filing, the Court directed him to explain the course of treatment
he received at the Chillicothe Correctional Institution and to
provide any supporting medical records or grievances.

Despite having been afforded this opportunity, Mr. Pointer
has not done so.  Instead, as detailed at length above, all of
his filings in response to the Court's order relate, almost

-8-

exclusively, to his alleged course of treatment at the Belmont Correctional Institution.  The information relating to his course of treatment at the Chillicothe Correctional Institution can be summed up as Mr. Pointer's having received two referrals - one for an MRI of his foot and one for a surgery consultation with the institutional podiatrist.  While, as the Court previously recognized, the ongoing denial of medical care can, in some instances, put an inmate in sufficient danger so that he satisfies the "three strikes" provision of the PLRA, Mr. Pointer has not provided any documentation supporting a conclusion that this was the circumstance when he filed his complaint in this action.  In fact, the limited amount of information he has provided relating to his time in the Chillicothe Correctional Institution indicates that just the opposite may have been true.

Mr. Pointer's subsequent filings simply do not suggest that he was being denied medical treatment with respect to his foot condition while he was incarcerated at the Chillicothe Correctional Institution.  Further, these filings do not address any denial of medical treatment, to the extent that they might fall within the exception permitted by §1915(g), relating to his issues of high blood pressure, dizziness, or his need for a bottom bunk restriction during his incarceration at the Chillicothe Correctional Institution.  Again, aside from Mr. Pointer's acknowledgment of the referrals for his foot condition, the focus of his subsequent filings, at least with respect to medical conditions potentially relevant to the exception under §1915(g), involves his course of treatment while at the Belmont Correctional Institution.

Because Mr. Pointer's filings address his alleged course of treatment after his transfer from the Chillicothe Correctional Institution, he cannot demonstrate that the danger of any harm was "real and proximate" and existed at the time of his

-9-

complaint.  See Rittner v. Kinder, 290 Fed. Appx. 796 (6th Cir. August 20, 2008).  As a result, the Court cannot conclude, based on the record before it, that Mr. Pointer has demonstrated that he was under imminent danger at the time of the filing of the complaint.  See Vandiver.  Consequently, Mr. Pointer has not met the exception under §1915(g) and is not entitled to proceed in forma pauperis.

Moreover, even if the Court were permitted to construe Mr. Pointer's filings quite broadly and consider the allegations concerning his medical treatment while at the Belmont Correctional Institution, he could not demonstrate imminent danger.  Mr. Pointer's most recent change of address filing indicates that he currently is incarcerated in the Lebanon Correctional Institution.  Mr. Pointer would be unable to demonstrate that he is facing a real and proximate threat from his course of medical treatment at the Belmont Correctional Institution now that he is no longer housed there.  See, e.g., Schuenke v. Wisconsin Dept of Corrections, 2009 WL 3086089 (W.D. Wis. Sept. 18, 2009) (plaintiff no longer faced emergency relating to asthma claim following transfer to another institution).  Stated another way, now that Mr. Pointer is housed in the Lebanon Correctional Institution, all of his filings relate to harm he allegedly suffered in the past and, therefore, cannot be considered "imminent."  See Rittner; see also Jennings v. Hall, 2010 WL 748239, *3 (W.D. Mich. March 3, 2010).

In summary, Mr. Pointer has failed to show that he was under imminent danger of serious physical injury as defined by §1915(g) for purposes of his current complaint filed while he was incarcerated at the Chillicothe Correctional Institution. Consequently, the Court recommends that the pending motion to proceed in forma pauperis be denied and that Mr. Pointer be required to pay the entire $350.00 filing fee.  The Court further

-10-

recommends that, if Mr. Pointer fails to pay the entire filing fee within thirty days of an order adopting this Report and Recommendation, this action be dismissed without prejudice for failure to prosecute and that Mr. Pointer still be assessed the $350.00 filing fee.  See, e.g., Cohen v. Growse, 2011 WL 947085 (E.D. Ky. March 14, 2011); see also In re Alea, 286 F.3d 378 (6th Cir. 2002).

## IV.  Recommended Decision

Based on the above discussion, it is recommended that the motion to proceed in forma pauperis (#1) be denied and that plaintiff be required to pay the entire $350.00 filing fee.  It is further recommended that plaintiff's failure to do so within 30 days of an order adopting this Report and Recommendation should result in this action being dismissed without prejudice for failure to prosecute and the assessment of the $350.00 filing fee against plaintiff.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and

Recommendation <u>de</u> <u>novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir.1981).

                    /s/ Terence P. Kemp
                    United States Magistrate Judge